# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-129** |
| **GREGORY BASS** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Gregory Bass is a sophisticated drug trafficker who orchestrated the transportation of cocaine and methamphetamine across the United States utilizing a motor vehicle carrier specifically attempting to evade law enforcement. He has pleaded guilty to Counts One and Two of the indictment, charging him with conspiracy to possess with intent to distribute methamphetamine and cocaine, and attempted possession with intent to distribute methamphetamine and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B) and 846, all arising from his conspiracy to possess with intent to distribute and attempted possession with intent to distribute of approximately 35.3 kilograms of methamphetamine and approximately 3,851 grams of cocaine. The defendant and the government entered into a guilty plea agreement pursuant to Rule 11(c)(1)(C) that the following specific sentence is the appropriate disposition of this case: a sentence in the range between 180 and 188 months' imprisonment; 10 years' supervised release; a fine, if any, to be determined by the Court; and a $200 special assessment.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C.

§ 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1] At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I.    BACKGROUND

This is a drug trafficking case stemming from a joint investigation by Homeland Security Investigations (HSI), Pennsylvania State Police (PSP), Pennsylvania Attorney General's Office - Bureau of Narcotics Investigations (PAAGO-BNI), and the Drug Enforcement Administration (DEA). Investigators obtained wiretaps on three of Bass' phones and a tracker warrant for one of

---

[1]  Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

his vehicles – a blue Chrysler Pacifica, which was registered to his daughter. While monitoring Bass's phones and tracking Bass's vehicle, investigators learned that Bass sent his vehicle to California to be loaded with drugs and shipped back to Philadelphia on a car carrier. On March 27, 2024, while enroute back to Philadelphia from California, the car carrier containing Bass's vehicle was stopped by PSP in Harrisburg for motor vehicle violations. The troopers began a Department of Transportation (DOT) inspection which revealed numerous DOT violations. The troopers obtained consent from the driver/owner of the car carrier to search the three vehicles on the car carrier. The search revealed a hidden compartment in the rear of Bass's vehicle. Inside the hidden compartment, the troopers located large quantities of cocaine and methamphetamine. Those narcotics were submitted to the DEA Laboratory for analysis. The analysis revealed that the methamphetamine is 100 % pure and the total weight is 35.3 kilograms (77.823 pounds), and the total amount of cocaine is 3.851 kilograms. Bass's vehicle was seized and the car carrier was towed from the area due to multiple DOT violations.

Bass was recorded on a number of wire intercepts discussing the seizure, including the following statement: "When I dropped the van off I just give them money and then I give them his number to drop it off at. … And then when they drop it back off over there it just comes to the lot and I probably just send somebody to get it. … it happens sometimes you know. …happens you know sometime they might take everything off the trucks and run a dog through there. They probably smelled some shit…" Bass also stated: "Yes, cause the shit in the van, I was supposed to make like $15,000. … I still owe people a lot of money. This shit really going to like, every body's shit was in my van so going to be looking at, at least try to find, try to find evidence saying that the van got took or whatever, because they going to be asking me questions you know. My one boy gave me forty grand, my other boy gave me twenty, my other boy gave me twenty, and then

my friend that gave you the ten grand his shit was in … they gave ah $12,000 his shit was in there, so ... that's the chance you take you know, but it just looks bad man."

The defendant and the government entered into a guilty plea agreement pursuant to Rule 11(c)(1)(C) and that the following specific sentence is the appropriate disposition of this case: a sentence in the range between 180 and 188 months' imprisonment, 10 years' supervised release, a fine, if any, to be determined by the Court, and a $200 special assessment.

## II.    SENTENCING CALCULATION

### A.    Statutory Maximum and Mandatory Minimum Sentence.

**Count One:** The total statutory maximum and mandatory minimum sentence for violating 21 U.S.C. §§ 846, 841(b)(1)(A), is lifetime imprisonment, a 15-year mandatory minimum term of imprisonment, a $20,000,000 fine, at least 10 years' supervised release up to lifetime supervised release, and a $100 special assessment.

**Count Two:** The total statutory maximum and mandatory minimum sentence for violating 21 U.S.C. §§ 846, 841(b)(1)(A), is lifetime imprisonment, a 15-year mandatory minimum term of imprisonment, a $20,000,000 fine, at least 10 years' supervised release up to lifetime supervised release, and a $100 special assessment.

**Total Statutory Maximum and Mandatory Minimum Sentence:** The total statutory maximum and mandatory minimum sentence is lifetime imprisonment, a 15-year mandatory minimum term of imprisonment, a $40,000,000 fine, at least 10 years' supervised release up to lifetime supervised release, and a $200 special assessment.

### B.    Sentencing Guidelines Calculation.

The Probation Office correctly calculated the defendant's advisory guideline range as 292 months to 365 months.  As noted in the PSR, the defendant's guideline range is driven by his

status as a career offender.  Notably, two of the three offenses driving this status were committed in 1999 (PSR ¶ 37) and 2001 (PSR ¶ 39) – 25 and 23 years prior to the instant offense, respectively.  The defendant was paroled on both of those violations in 2005.  Those two offenses fall within the 15-year applicable time period under USSG § 4A1.2(e)(1), however, because when the defendant committed an additional crime in 2008 (PSR ¶ 40), his return to custody qualified not only as a sentence for the 2008 offense, but also as a parole violation for the crimes committed in 1999 and 2001.

III.    **ANALYSIS**

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or

vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The government accordingly discusses the Section 3553(a) factors below:

### 1. The nature and circumstances of the offense and the seriousness of the offense, respect for the law, and just punishment

A significant term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). The defendant committed serious crimes by operating at a level of sophistication that far exceeds that of a street level drug trafficker. Rather than impulsive, this was a highly organized multi-layered enterprise specifically designed to evade law enforcement while supplying controlled substances to multiple local drug traffickers. The intercepted calls reveal that the defendant operated as a hub for local distributers and coordinated their pooled funds into a single massive shipment of cocaine and methamphetamine. To protect the collective investment and to minimize the risks of a routine traffic stop, the defendant utilized high-level logistics by shipping the vehicle on a commercial car carrier to California, attempting to blend it in with legitimate business.

Once the vehicle made its way to California, the defendant flew there to meet the vehicle and have it "loaded." The vehicle was subsequently placed back on a commercial car carrier to travel back to Pennsylvania where he and his investors could realize their profits through the sale of the controlled substances stored inside of the vehicle. There were many layers of concealment

being utilized by the defendant. Not only was the vehicle registered to his daughter and placed on a car carrier, but the drugs themselves were located within an aftermarket trap in the back of the vehicle.

The seriousness of the offense is underscored by the lengths the defendant went to ensure the successful movement of narcotics across the country and into the hands of other drug traffickers and members of the communities where they would inevitably be distributed and consumed.

The use of interstate transportation, specialized concealment techniques, and a commercial vehicle carrier reflects planning, coordination, and an understanding of law enforcement investigative methods. The measures taken by the defendant are hallmarks of a mature and professional drug trafficker. Respect for the law is only promoted when those who engage in sophisticated criminal enterprises are held fully accountable for their actions. The sentence should also be reflective of not only the offense, but the defendant's role in carrying it out. Here, the defendant was the person responsible for the coordination, planning, and transportation of cocaine and methamphetamine across state lines not only for himself, but for others.

### 2.    The history and characteristics of the defendant

The presentence report describes that the defendant is a Philadelphia native (PSR ¶ 56) with strong familial ties in the Philadelphia area, California, and North Carolina (PSR ¶ 57-58). The defendant has five children from four relationships and reports continued contact with all of his children despite his incarceration (PSR ¶ 62-65). The defendant reports he was most recently employed as a home health aid approximately seven days a month earning $15 per hour (PSR ¶ 84). Despite that report, a Pennsylvania Department of Labor and Industry employment inquiry did not return any verified employment records for the defendant (PSR ¶ 86). The defendant candidly acknowledged that, during periods of unemployment, he engaged in the sale of illegal

narcotics to support himself financially (PSR ¶ 87).

### 3. Deterrence and protection of the public

A significant sentence within the agreed upon rage is necessary to protect the public and to deter others who engage in similar conduct. The harm caused by drug trafficking extends far beyond the individuals directly involved. It fuels addiction, violence, property crimes, and the degradation of neighborhoods. Individuals who employ sophisticated methods, such as the ones utilized by this defendant, do so because the financial rewards are substantial. Only a substantial period of incarceration will serve as a meaningful deterrent to those considering similar conduct and ensure that the defendant is unable to continue contributing to the distribution of dangerous drugs while incarcerated. The protection of the public requires a sentence that reflects the calculated nature of this offense, promotes respect for the law, and communicates that those who choose to profit from poisoning communities will face serious consequences.

### 4. The need for training, medical care, or other correctional treatment

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). While serving an appropriate sentence, the defendant will have the opportunity to take advantage of educational or vocational training.

### 5. The guidelines and policy statements, and the need to avoid unwarranted sentencing disparities

A sentence within the range pursuant to Rule 11(c)(1)(C) will avoid unwarranted sentencing disparities.

The government recognizes that the negotiated sentencing range falls below the advisory guideline range. The guideline range is inflated by the defendant's Career Offender Status. While

the defendant technically qualifies as a Career Offender under the Guidelines, the strict application of that enhancement overstates the seriousness of the defendant's criminal history. As mentioned above, the predicate offenses were committed in 1999 and 2001. The defendant was paroled on both of these violations in 2005. A new conviction in 2008 triggered probation violations for the 1999 and 2001 offenses, thus bringing them within the 15-year applicable lookback period. Because the convictions themselves are deeply historical and the career offender status is only applicable because of a technical probation violation, the Government believes that the agreed upon variance in the sentencing range is fair.

## IV.   CONCLUSION

The government recommends a sentence of incarceration, in the range between 180 and 188 months' imprisonment, 10 years' supervised release, a fine, if any, to be determined by the Court, and a $200 special assessment consistent with the plea agreement pursuant to Rule 11(c)(1)(C).

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Karin Judge*
KARIN JUDGE
Special Assistant United States Attorney
PATRICK BROWN
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served by electronic filing

on:

Robert Gamburg, Esq.

/s Patrick Brown
PATRICK BROWN
Assistant United States Attorney

DATED: July 7, 2026.